**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**
**CIVIL ACTION NO.  3:21-CV-00203-CHL**

KIMBERLY DAWN H.,[1]                                                    **Plaintiff,**

**v.**

**COMMISSIONER OF SOCIAL SECURITY,**                      **Defendant.**

<u>**MEMORANDUM OPINION AND ORDER**</u>

Before the Court is the complaint of Plaintiff Kimberly Dawn H. (the "Claimant"), seeking

judicial review of the final decision of the Commissioner of Social Security (the "Commissioner").

(DN 1.)  *See* 42 U.S.C. § 405(g).  On January 14, 2022, Claimant filed her fact and law summary,

(DN 20), and on May 1, 2022, the Commissioner filed her fact and law summary.  (DN 26.)  The

Parties have consented to the jurisdiction of a Magistrate Judge to enter judgment in this case with

direct review by the Sixth Circuit Court of Appeals in the event an appeal is filed.  (DN 15.)

Therefore, this matter is ripe for review.

**I.      FINDINGS OF FACT**

On January 7, 2019, Claimant filed applications for Supplemental Security Income ("SSI")

and Child's Insurance Benefits ("CIB") alleging that she was disabled as of December 19, 2020

due to severe neck pain, TMJ, ADHD, anxiety, depression, bipolar, learning disability, obesity,

and papilledema.  (R. at 260, 266, 281.)  Her applications were denied initially on March 8, 2019

and on reconsideration on July 8, 2019.  (*Id.* at 72, 74, 104, 106.)  On March 4, 2020,

Administrative Law Judge Neil Morholt (the "ALJ") held a hearing on Claimant's applications.

(*Id.* at 37–71.)  During the hearing, the ALJ heard testimony from Claimant, who was assisted by

---

[1] Pursuant to General Order 22-05, the Plaintiff in this case is identified and referenced solely by first name and last
initial.

a representative, and from vocational expert Lauren Wright.  (*Id.*)  In a decision dated March 26, 2020, the ALJ engaged in the five-step evaluation process promulgated by the Commissioner to determine whether an individual is disabled, and in doing so, made the following findings:

1. . . . [T]he claimant had not attained age 22 as of December 19, 2000, the alleged onset date (20 CFR 404.102, 416.120(c)(4) and 404.350(a)(5)).

2. The claimant has not engaged in substantial gainful activity since December 19, 2000, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: Oppositional defiant disorder (ODD); attention deficit hyperactivity disorder (ADHD); depression; generalized anxiety disorder; learning disorder; and obesity (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. . . . [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can lift and/or carry up to twenty-five pounds occasionally and up to ten pounds frequently. This claimant can be frequently exposed to extreme cold, extreme heat, vibration, dust, odors, fumes, gases, and other pulmonary irritants, unprotected heights and moving mechanical parts. This claimant can understand, remember, and carry out simple routine tasks in a routine work setting having minimal variations and little independent judgment for extended two-hour periods before the need for a regularly scheduled break. This claimant can occasionally interact with the general public, and can make simple work-related decisions.

6. The claimant has no past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was . . . 0 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 404.1568 and 416.968).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from December 19, 2000, through the date of this decision (20 CFR 404.350(a)(5), 404.1520(g) and 416.920(g)).

(*Id.* at 19–28.)

Claimant requested review of the ALJ's decision and on January 29, 2021, the Appeals Council denied her request. (*Id.* at 1.) On March 31, 2021, Claimant timely filed this action. (DN 1.)

## II.   CONCLUSIONS OF LAW

### A.  Standard of Review

The Court may review the final decision of the Commissioner, but that review is limited to whether the Commissioner's findings are supported by "substantial evidence" and whether the Commissioner applied the correct legal standards. 42 U.S.C. § 405(g); *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997). "Substantial evidence" means "more than a mere scintilla"; it means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The Court must "affirm the Commissioner's decision if it is based on substantial evidence, even if substantial evidence would also have supported the opposite conclusion." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 374 (6th Cir.

2013); *see Smith v. Sec'y of Health & Human Servs.*, 893 F.2d 106, 108 (6th Cir. 1989) (holding that if the Court determines the ALJ's decision is supported by substantial evidence, the court "may not even inquire whether the record could support a decision the other way"). However, "failure to follow agency rules and regulations" constitutes lack of substantial evidence, even where the Commissioner's findings can otherwise be justified by evidence in the record. *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011).

### B. Five-Step Sequential Evaluation Process

The Commissioner has promulgated regulations that set forth a five-step sequential evaluation process that an ALJ must follow in evaluating a disability claim. 20 C.F.R. § 416.920 (2021). In summary, the evaluation process proceeds as follows:

1. Is the claimant involved in substantial gainful activity? If the answer is "yes," the claimant is not disabled. If the answer is "no," proceed to the next step.

2. Does the claimant have a medically determinable impairment or combination of impairments that satisfies the duration requirement[2] and significantly limits his or her physical or mental ability to do basic work activities? If the answer is "no," the claimant is not disabled. If the answer is "yes," proceed to the next step.

3. Does the claimant have an impairment that meets or medically equals the criteria of a listed impairment within 20 C.F.R. Part 404, Subpart P, Appendix 1? If the answer is "yes," the claimant is disabled. If the answer is "no," proceed to the next step.

4. Does the claimant have the residual functional capacity ("RFC") to return to his or her past relevant work? If the answer is "yes," then the claimant is not disabled. If the answer is "no," proceed to the next step.

5. Does the claimant's RFC, age, education, and work experience allow him or her to make an adjustment to other work? If the

---

[2] To be considered, an impairment must be expected to result in death or have lasted/be expected to last for a continuous period of at least twelve (12) months. 20 C.F.R. § 416.909 (2021).

> answer is "yes," the claimant is not disabled.  If the answer is "no," the claimant is disabled.

20 C.F.R. § 416.920(a)(4).

The claimant bears the burden of proof with respect to Steps 1 through 4.  *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).  However, the burden shifts to the Commissioner at Step 5 to prove that other work is available that the claimant is capable of performing.  *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008).  The claimant always retains the burden of proving lack of RFC.  *Id.*; *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 392 (6th Cir. 1999).

### C.  Step 3 – Listings of Mental Disorders

The Listing of Impairments defines impairments that the agency considers "severe enough to prevent an individual from doing any gainful activity."  20 C.F.R. § 416.925(a) (2021); *see Sullivan v. Zebley*, 493 U.S. 521, 531–32 (1990).  A claimant's impairment must meet every element of a listing before the Commissioner will conclude that she is disabled at Step 3.  *See* 20 C.F.R. § 416.920(d); *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 855 (6th Cir. 1986).  The claimant has the burden to prove all elements are satisfied.  *King v. Sec'y of Health & Human Servs.*, 742 F.2d 968, 974 (6th Cir. 1984).  Mental disorders under Listings 12.07, 12.08, 12.10, 12.11, and 12.13 have two paragraphs, designated A and B, and a claimant's mental disorder must satisfy the requirements of both paragraphs A and B to meet the Listing.  *See* 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.00 (A)(2)(a)–(c) (2021).  Paragraph A of each Listing outlines the medical criteria that must be present in a claimant's medical evidence and Paragraph B provides the functional criteria used to assess how a claimant's mental disorder limits her functioning.  *Id.* Paragraph B criteria are used "to evaluate how [a claimant's] mental disorder limits [her] functioning" and "[t]hese criteria represent the areas of mental functioning a person uses in a work

setting." *Id.* § 12.00(A)(2)(b).  The four areas of functioning under paragraph B are: "understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself." *Id.*  Paragraph B criteria are evaluated on a five-point scale:

> a. No limitation (or none). You are able to function in this area independently, appropriately, effectively, and on a sustained basis.
>
> b. Mild limitation. Your functioning in this area independently, appropriately, effectively, and on a sustained basis is slightly limited.
>
> c. Moderate limitation. Your functioning in this area independently, appropriately, effectively, and on a sustained basis is fair.
>
> d. Marked limitation. Your functioning in this area independently, appropriately, effectively, and on a sustained basis is seriously limited.
>
> e. Extreme limitation. You are not able to function in this area independently, appropriately, effectively, and on a sustained basis.

To satisfy the Paragraph B criteria, a plaintiff's mental disorder must result in "extreme" limitation of one, or "marked" limitation of two, of the four areas of mental functioning.  *Id.* § 12.00(F)(2).

### D.  Claimant's Contentions

Claimant challenges the ALJ's findings at Steps 4 and 5 based on the ALJ's RFC determination, alleging that the RFC determination does not account fill the full range of her mental impairments.[3]  An ALJ's RFC finding is the ALJ's ultimate determination of what a claimant can still do despite his or her physical and mental limitations. 20 C.F.R. §§ 416.945(a)(1), 416.946(c), (2021).  The ALJ bases his or her determination on all relevant evidence in the case record, including statements from medical sources.  20 C.F.R. §§ 416.929 (2001); 416.945(a)(1)– (4).  Thus, in making his or her determination of a claimant's RFC, an ALJ must necessarily

---

[3] Claimant does not challenge the ALJ's findings with respect to her physical RFC.

evaluate the medical opinions in the record and assess the claimant's subjective allegations.  20

C.F.R. § 416.927 (2021); 20 C.F.R. § 416.929(a).

Here, at Step 4, the ALJ considered the extent to which Claimant's allegation of disabling

symptoms was consistent with the evidence in the record.  In assessing the alleged symptoms that

Claimant attributes to her mental impairments, the ALJ considered the objective medical evidence

in the record, which he summarized as follows:

> Behavioral health assessment in December 2018 shows that the
> claimant had appropriate grooming and dress. She had euthymic
> mood and congruent affect, as well as normal speech, thought
> process, and thought content. Further, the provider indicated that the
> claimant had intact memory and intact judgment and insight. She
> was diagnosed with ODD, ADHD, and depression. The claimant's
> mental conditions were noted to be stable and she was advised to
> continue her medication regimen to treat her ADHD and depression
> symptoms (Ex. 5F/3-4).

> Mental status evaluation in April 2019 shows that the claimant had
> intact orientation, memory, judgment, and insight, as well as
> euthymic mood and congruent affect. She was diagnosed with ODD,
> ADHD, and depression, all noted to be stable on her medication
> regimen (Ex. 20F/10-11). The claimant presented for a
> psychological consultative examination in June 2019. The examiner
> observed that the claimant had neglected grooming, but had neat and
> clean clothing. She also had restless motor activity. She had normal
> attention to task and concentration during the assessment, but was
> noted to have deficits with her immediate, recent, and remote
> memory. The claimant indicated that her mood was neutral and she
> had appropriate affect. She had normal eye contact, responsive
> facial expression, and cooperative behavior. The examiner observed
> that the claimant had normal speech and thought process. Although
> she had only fair judgment and poor decision-making, she had good
> insight and adequate reality testing. Further, the claimant had an
> average full-scale IQ score of 95 with intellectual testing. The
> examiner diagnosed the claimant with major depressive disorder,
> attention deficit hyperactivity disorder, and generalized anxiety
> disorder (Ex. 19F/1-4).

> The claimant presented for psychological assessments in May, June,
> and July 2019. She reported persistent difficulties with her attention,
> interpersonal problems, and learning difficulties with math. The

provider noted that the claimant was dressed appropriately and seemed attentive during difficult tasks. She appeared to enjoy challenges posed by the testing and was bored by rote learning tasks. Intelligence testing showed that the claimant had a fullscale IQ score of 103. Although the claimant was observed to have some issues with inattention and hyperactive behaviors, she did not seem to have these symptoms in an academic setting. Further, the provider noted that the claimant's attention issues were more related to her anxiety and depression symptoms than her ADHD condition. The claimant's perceptual reasoning, working memory, and processing speed findings were all in the average range. Notably, the claimant had verbal working memory and sentence memory findings in the above average range. The provider also indicated that the claimant's verbal abilities were in the very superior range. The claimant was diagnosed with major depressive disorder with anxious distress and a specific learning disorder with impairment in mathematics, specifically memorization of arithmetic facts and accurate math reasoning (Ex. 22F/1-10).

. . .

Mental status evaluation in August 2019 showed that the claimant had euthymic mood and affect, intact memory, and appropriate thought process and content. She also had intact insight and judgment and normal speech. The claimant was diagnosed with ODD, major depressive disorder, and ADHD. Her mental conditions were noted to be stable on medication, which she was advised to continue taking (Ex. 42F/14-15).

In October 2019, during a counseling appointment, the claimant reported experiencing symptoms of anxiety and was noted to have a flat affect. However, she denied abnormal ideation and was not at risk of harm (Ex. 40F/7). The claimant also presented for a medication refill in October 2019. She was noted to be alert and oriented and had clear speech. Although she was anxious appearing, she had logical and goal-directed thought process. The claimant was diagnosed with obesity, major depressive disorder, and ADHD (Ex. 41F/7-8).

In December 2019, the claimant presented for a routine follow-up regarding weight gain. . . . The claimant [] had appropriate psychiatric findings.

(R. at 22–24.)

The ALJ also considered the opinion evidence in the record, including opinions of state agency reviewing consultants Gary Perry, Ed.D. ("Dr. Perry") and Frances McNeal, Ph.D. ("Dr.

McNeal"), state agency evaluating consultant J. Lorilea Conyer, M.A., LPP ("Ms. Conyer"), and treating providers A. Melissa Fincher, LPA ("Ms. Fincher") and Charles Embry, M.D. ("Dr. Embry"). (*Id.* at 24–27.) The ALJ ultimately concluded that Claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that Claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms were not consistent with the record. (*Id.* at 24.) The ALJ determined that Claimant had a mental RFC to "understand, remember, and carry out simple routine tasks in a routine work setting having minimal variations and little independent judgment for extended two-hour periods before the need for a regularly scheduled break[,] . . . occasionally interact with the general public, and [] make simple work-related decisions." (*Id.* at 21.)

Claimant contends that the ALJ's RFC determination is not supported by substantial evidence because it does not incorporate the full range of limitations proposed in the consultative medical opinions that the ALJ found persuasive, because the ALJ failed to comply with the regulations governing opinion evidence in evaluating the opinions of Claimant's treating providers, and because the ALJ selectively reviewed the evidence in the record in evaluating the opinion evidence. (DN 20-1, at PageID # 1612–21.) The Court addresses Claimant's contentions below.

### 1.    Consultative Medical Opinions

During the initial stage of Claimant's applications, Dr. Perry conducted a psychiatric evaluation. (*Id.* at 82–83, 85–88, 96, 99–102.) In a report dated March 8, 2019, Dr. Perry assessed the Paragraph B criteria under the Listings for Claimant's mental disorders and found mild limitation in ability to understand, remember or apply information, and moderate limitations in the

three other areas of mental functioning.  (*Id.* at 82, 96.)  Dr. Perry also assessed Claimant's mental

RFC and found that Claimant was able to:

> A. Understand and remember simple and detailed instructions and procedures requiring initial learning periods lasting up to 60 days[;]
>
> B. Sustain attention, concentration, effort and pace for tasks requiring some independent judgment and involving minimal variations over two hour work segments with normal breaks;
>
> C. Interact with the public occasionally (up to 1/3 time) and with co-workers and supervisors frequently (up to 2/3 time) for task completion in a work environment, that offers non-confrontational contact sufficient for task completion[;] and
>
> D. Adapt to situational conditions and normal changes in routine and hazards in the workplace.

(*Id.* at 87, 101.)

It was determined that Claimant was not disabled, and Claimant subsequently requested

reconsideration.  During the reconsideration stage, Claimant was referred to Ms. Conyer for a

consultative examination, which Ms. Conyer conducted on June 3, 2019.  (*Id.* at 794.)  The

evaluation included a clinical interview, mental status examination, review of available records,

and administering cognitive tests.  (*Id.*)  In a subsequent report, Ms. Conyer summarized her

findings with respect to each of these methods.  (*Id.* at 794–97.)  Ms. Conyer also assessed

Claimant's mental functional capacity, finding:

> 1. [Claimant]'s capacity to understand, remember, and carry out instructions towards performance of simple repetitive tasks appears affected by these impairments to a slight degree.
>
> 2. Her ability to tolerate stress and pressure of day-to-day employment appears affected by these impairments to a marked degree.

3. Her ability to sustain attention and concentration towards performance of simple repetitive tasks appears affected by these impairments to a moderate degree.

4. Her capacity to respond appropriately to supervisors and coworkers in a work setting appears to be affected by these impairments to a moderate degree.

(*Id.* at 798.)

Upon reconsideration of the initial disability determination, Dr. McNeal reviewed Dr. Perry's initial findings in light of the new evidence in the record. (*Id.* at 116–18, 120–23, 135–36, 139–41.) In his report dated July 8, 2019, Dr. McNeal discussed Ms. Conyer's medical source statement and found it "highly persuasive [due to] consistency between [her] findings and overall medical and nonmedical evidence on file." (*Id.* at 123, 141.) Based on the report and the other new evidence in the record, Dr. McNeal determined that greater restrictions beyond those in Dr. Perry's RFC assessment were warranted. (*Id.*) Specifically, Dr. McNeal found that Claimant was capable of no more than occasional interpersonal interactions and of understanding and remembering only simple instructions requiring an initial learning period of thirty days or less. (*Id.*) However, Dr. McNeal found that the evidence showed "no significant factors or findings that would alter the initial severity assessment" of the Paragraph B criteria set forth in Dr. Perry's report. (*Id.*)

In evaluating the opinion evidence in the record, the ALJ found the opinions of Dr. Perry and Dr. McNeal "generally persuasive" and "note[d] that Dr. McNeal's opinion is more persuasive." (*Id.* at 25.) The ALJ explained:

> The undersigned has considered these opinions and finds that they are generally persuasive. The undersigned notes that Dr. McNeal's opinion is more persuasive. The findings are reasonably well-supported with explanation of what the doctors saw in the record (Ex. 3A/12; 4A/12; 7A/15-16; 8A/15-16). Although non-examining, these doctors are well-versed in the assessment of functionality as it

pertains to the disability provisions of the Social Security Act and Regulations. Further, the undersigned finds that the opinions are mostly consistent with the record as a whole. Notably, the claimant reported that she has problems with her memory, understanding, concentration, and ability to get along with others. She testified that she is enrolled in college and attends classes in person and online. She noted that she receives extended time to complete assignments. The claimant also stated that she has an emotional support dog, but is able to attend college without him (Ex. 5E/7-8; 6E/3-5; Hearing Testimony). Mental status evaluation shows that the claimant had some limitations with attention and was noted to have hyperactive and restless behavior. However, she generally had average intellectual functioning, evidenced by her full-scale IQ scores. Although she had some deficits with her memory, judgment, and decision-making, she generally had appropriate eye contact and cooperative behavior. She also had good insight and adequate reality testing. Additional testing showed that the claimant had perceptual reasoning, working memory, and processing speed abilities in the average range (Ex. 19F/1-4; 22F/1-10). Therefore, the above opinions are generally persuasive, with more persuasiveness granted to Dr. McNeal's opinion, as they are consistent with and supported by objective evidence.

(*Id.* at 25.)

With respect to Ms. Conyer's opinion, the ALJ found it "generally persuasive," explaining:

The opinion is supported by objective evidence in the form of mental diagnostic evaluation that accompanied it (Ex. 19F/1-4). Further, the undersigned finds that the opinion is generally consistent with the record as a whole. Notably, the claimant reported that she has limitations with her memory, understanding, concentration, and ability to get along with others. She reported difficulty paying attention and completing tasks. The claimant also experienced panic attacks due to her anxiety (Ex. 5E/7-8; 6E/3-5; Hearing Testimony). Upon examination, the claimant was noted to have some problems with attention, which were attributed to her anxiety and depression symptoms. However, she generally had memory skills in the average range and intelligence testing. The claimant was also observed to have mostly appropriate mood and affect, as well as cooperative behavior, during evaluation (Ex. 5F/3-4; 20F/10-11; 22F/1-10). Therefore, the above opinion is generally persuasive, to the extent it is consistent with and supported by the objective evidence of record which shows no more than moderate limitations in the paragraph B criteria.

(*Id.* at 26.)

Claimant argues that the ALJ's RFC determination is not supported by substantial evidence because it does not incorporate all of Dr. McNeal's findings despite the fact that the ALJ deemed Dr. McNeal's opinion persuasive.  (DN 20-1, at PageID # 1613–14.)   Specifically, Claimant emphasizes that in Section I of the Mental Residual Functional Capacity Assessment portion of his report, Dr. McNeal selected "marked limitation" under a prompt to rate Claimant's ability to respond appropriately to changes in the work setting.  (*Id.* at 1614 (citing R. at 122).)   Claimant argues that the ALJ erred both in failing to mention this finding anywhere in his decision and in failing to incorporate into his RFC determination a limitation included in a credited medical opinion.  (*Id.* at 1613–16.)   However, the Social Security Administration's Programs Operations Manual System ("POMS") states that Section I "is merely a worksheet to aid in deciding the presence and degree of functional limitations and the adequacy of documentation and **does not constitute an RFC assessment.**"   POMS DI § 24510.060(B)(2) (emphasis in original); *see also Kirves v. Callahan*, 113 F.3d 1235 (6th Cir. 1997) (unpublished) (noting that this circuit views POMS as persuasive authority).   The narrative explanation, located at Section III of the Assessment represents "the actual mental RFC assessment" by the reviewing consultant.  POMS DI § 24510.060(B)(4).   Thus, here, "the ALJ was not required to acknowledge or discuss the marked limitations found in Section I of the form."   *Kees v. Comm'r of Soc. Sec.*, No. 3:16-CV-488-DJH-DW, 2018 WL 1411021, at *3 (W.D. Ky. Mar. 20, 2018) (citing *Wright v. Colvin*, No. 0:14-20-EBA, 2015 WL 927445, at *2 (E.D. Ky. Mar. 4, 2015) and *Griffith v. Colvin*, No. 6:13-23-DCR, 2013 WL 5536476, at *6 (E.D. Ky. Oct. 7, 2013), *aff'd sub nom. Griffith v. Comm'r of Soc. Sec.*, 582 F. App'x 555 (6th Cir. 2014)); *see also Quisenberry v. Comm'r of Soc. Sec.*, No. 2:16-CV-11156, 2017 WL 4946575, at *9 (E.D. Mich. July 17, 2017), *report and recommendation*

13

*adopted*, No. 2:16-CV-11156, 2017 WL 4276967 (E.D. Mich. Sept. 27, 2017), *aff'd*, 757 F. App'x 422 (6th Cir. 2018); *O'Bryan v. Colvin*, No. 5:13-CV-00188-LLK, 2014 WL 2167600, at *2 n.3 (W.D. Ky. May 23, 2014).  Because the ALJ incorporated the RFC restrictions set forth in the narrative portion of the assessment, the ALJ's RFC determination did not conflict with the findings by Dr. McNeal that the ALJ found persuasive.

Next, Claimant argues that the ALJ's RFC determination is not supported by substantial evidence because it does not incorporate all of Ms. Conyer's findings despite the fact that the ALJ deemed her opinion persuasive.  (DN 20-1, at PageID # 1614.)  Specifically, Claimant emphasizes Ms. Conyer's finding that "[h]er ability to tolerate stress and pressure of day-to-day employment appears affected by these impairments to a marked degree."  (*Id.* (citing R. at 798).)  Claimant contends, "The ALJ provides no explanation why the *marked* limitations in [Claimant]'s ability to tolerate stress and pressure of day-to-day employment are not found persuasive."  (*Id.* at 1615.) However, contrary to Claimant's contention, the ALJ did not outright reject this finding.  Rather, in evaluating Ms. Conyer's opinion, the ALJ found her functional assessment as a whole "generally persuasive, to the extent it is consistent with and supported by the objective evidence of record which shows no more than moderate limitations in the paragraph B criteria."  (R. 26.) This qualification provides an important clarification because although "ability to tolerate stress and pressure of day-to-day employment" is not one of the enumerated Paragraph B criteria, the use of the term "marked" to rate mental functioning can be interpreted as an application of five-point scale used at Step 3 to assess whether a claimant meets a mental impairment listing.  While Claimant argues that crediting Ms. Conyer's opinion subject to conformance with his Paragraph B findings "put[s] the cart before the horse," (DN 20-1, at PageID # 1615), such was in line with the ALJ's sequential analysis.  Indeed, earlier in his decision, at Step 3, the ALJ considered the

severity of Claimant's mental impairments under the Paragraph B criteria and found either mild or moderate limitations in each area of mental functioning.  (R. at 20–21.)  Later in the decision, in evaluating Dr. Perry's and Dr. McNeal's opinions, the ALJ discussed their identical Paragraph B findings and found their opinions persuasive.  (*Id.* at 24–25.)  Notably, Claimant does not object to the ALJ's Step 3 findings.[4]  (*See* DN 20-1, at PageID # 1602.)

"The Social Security Administration has long distinguished between findings of limitations under the Paragraph B criteria and those included in an RFC assessment."  *Koster v. Colvin*, No. 1:13-CV-2719, 2015 WL 413795, at *5 (N.D. Ohio Jan. 30, 2015) *aff'd sub nom. Koster v. Comm'r of Soc. Sec.*, 643 Fed. App'x. 466 (6th Cir. 2016).   Indeed, "a marked limitation is not synonymous with a specific functional restriction or RFC."  *Haggard v. Berryhill*, No. 3:17-CV-99-DCP, 2018 WL 6003862, at *8 (E.D. Tenn. Nov. 15, 2018); *Shinlever v. Berryhill*, No. 3:15-CV-371-CCS, 2017 WL 2937607, at *3 (E.D. Tenn. July 10, 2017) (collecting cases) ("[A] finding by an ALJ that a claimant has 'marked' limitations in social functioning at Step 3, for example, does not mean that the claimant's RFC will have corresponding or identical limitations."); *Coe v. Soc. Sec. Admin.*, No. 2:20-CV-00029, 2022 WL 1216572, at *9 (M.D. Tenn. Feb. 8, 2022), *report and recommendation adopted*, No. 2:20-CV-00029, 2022 WL 672153 (M.D. Tenn. Mar. 7, 2022).

---

[4] At one point in her fact and law summary, Claimant alleges that the ALJ failed to "reconcile the inconsistency between the paragraph B finding of *moderate* limitation in the ability to adapt to change and Dr. McLean's *marked* limitation in this same area." (DN 20-1, at PageID # 1615.)  As was discussed above, the ALJ's Paragraph B findings mirrored the Paragraph B findings by Dr. Perry and Dr. McLean; Dr. McLean's response in Section I of the RFC Assessment worksheet was not a Paragraph B finding.  Additionally, in the context of her objection based on the ALJ's evaluation of Dr. Embry and Ms. Fincher's opinion, Claimant states that "[t]he limitations provided by these treating sources would also find Plaintiff disabled pursuant to Listing 12.04, had the opinions been evaluated properly." (*Id.* at 1621.)  To the extent that the two statements above can be construed as an objection to the ALJ's Step 3 findings, this objection is waived. *See United States v. Layne*, 192 F.3d 556, 566 (6th Cir. 1999) (quoting *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997)) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived."); *see also Brindley v. McCullen*, 61 F.3d 507, 509 (6th Cir. 1995) (observing that "[w]e consider issues not fully developed and argued to be waived."); *Rice v. Comm'r of Soc. Sec.*, 2006 WL 463859, at *2 (6th Cir. 2006) (unpublished opinion).

Here, Claimant provides no explanation of how a marked limitation in "ability to tolerate stress and pressure of day-to-day employment" is inconsistent with the ALJ's RFC determination. Instead, she offers reasons why *no* ability to function in these areas renders an individual unable to work. (DN 20-1, at PageID # 1616–17.) (*See* R. at 67–68.) This characterization does not reflect Ms. Conyer's marked limitation finding, which was based on a rubric that defined "marked" as "severely limited, but not precluded" and "extreme" as "no useful ability to function in this area." (R. at 798.) In sum, the Court finds no inherent conflict between Ms. Conyer's finding and the ALJ's ultimate RFC determination.

### 2. Compliance with the Regulations for Evaluating Opinion Evidence

Claimant argues that the ALJ's RFC determination was not supported by substantial evidence because the ALJ failed to properly evaluate the opinions of Claimant's treating providers, Ms. Fincher and Dr. Embry. (DN 20-1, at PageID # 1618–21.) The Court notes that Claimant repeatedly asserts that the ALJ erred in failing to "give good reasons for rejecting" their opinions. (*Id.* at 1618, 1621.) In these instances, Claimant misstates the applicable standard for evaluating medical opinion evidence. *See Howard v. Comm'r of Soc. Sec.*, No. CV 20-111-HRW, 2021 WL 3271341, at *3 (E.D. Ky. July 30, 2021) (noting that the new regulations "no longer mandate particularized procedures that the adjudicator must follow in considering opinions from treating sources (e.g., requirement that adjudicators must 'give good reasons' for the weight given a treating source opinion).").

Under the old regulations, the ALJ was required to provide "good reasons" for the weight it assigns the treating-source opinion. *Cole*, 661 F.3d at 937 (citing 20 C.F.R. § 404.1527(d)(2)). The new regulations for evaluating opinion evidence are applicable to Claimant's case because he filed his application after March 27, 2017. *See* 20 C.F.R. § 416.920c (2021) ("For claims filed on

or after March 27, 2017, the rules in this section apply.").  Under the new regulations an ALJ will not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)" in the record regardless of its source.[5]  20 C.F.R. § 416.920c(a).  Instead, an ALJ will evaluate the "persuasiveness" of a medical opinion by reference to the five factors listed in the regulation: supportability, consistency, relationship with the claimant, specialization, and other factors.  20 C.F.R. § 416.920c(a), (c).  The regulation provides that the two most important factors are supportability and consistency and that an ALJ is required to "explain how [he or she] considered the supportability and consistency factors for a medical source's medical opinions . . . ."  20 C.F.R. § 416.920c(a), (b)(2).  However, the regulation states that "it is not administratively feasible for [an ALJ] to articulate in each determination or decision how [he or she] considered all of the factors for all of the medical opinions . . . in [the] case record"; thus, an ALJ is not required to explicitly discuss how he or she weighed the factors of relationship with the claimant,[6] specialization, and other factors in every case.[7]  20 C.F.R. § 416.920c(b)(1)–(2).

The Sixth Circuit has not elucidated a specific standard to determine whether an ALJ sufficiently complied with the requirement to "articulate how [he or she] considered the medical opinions" and "explain how [he or she] considered the supportability and consistency factors" under the new regulations.  20 C.F.R. § 416.920c(b).  *But see Deaner v. Comm'r of Soc. Sec.*, 840 F. App'x 813, 822 (6th Cir. 2020) (White, J. dissenting) (applying the new regulations and finding

---

[5] This language indicates that the new regulation has done away with the controlling weight and other old rules regarding the weight to be ascribed to medical opinions.  20 C.F.R. § 416.927(c)(2) (2021).

[6] In assessing this factor, the regulation requires an ALJ to consider the length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, and examining relationship.  20 C.F.R. § 416.920c(c)(3)(i)–(v).

[7] The regulations provide that an ALJ will consider any "other factors that tend to support or contradict a medical opinion."  20 C.F.R. § 416.920c(c)(5).  These factors include, but are not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim," "whether new evidence [ ] receive[d] after the medical source made his or her medical opinion . . . makes the medical opinion . . . more or less persuasive," and whether the medical source has "an understanding of [the] disability program's policies and evidentiary requirements."  *Id.*

that "[t]he ALJ did not clearly analyze the supportability and consistency of the state consultants'

assessments, as compared to other evidence in the record which supported [the plaintiff]'s

claims").  However, district courts applying the new regulations within this circuit consistently

apply the articulation requirement literally.  *See, e.g., Hardy v. Comm'r of Soc. Sec.*, 554 F. Supp.

3d 900, 906 (E.D. Mich. 2021) ("The administrative adjudicator has the obligation in the first

instance to show his or her work, i.e., to explain in detail *how the factors actually were applied* in

each case, to each medical source. Resorting to boilerplate language to support a finding of

unpersuasiveness does not satisfy that obligation." (emphasis in original)); *White v. Comm'r of

Soc. Sec.*, No. 1:20-CV-00588-JDG, 2021 WL 858662, at *21 (N.D. Ohio Mar. 8, 2021)

("Although the new standards are less stringent in their requirements for the treatment of medical

opinions, they still require that the ALJ provide a coherent explanation of [her] reasoning."); *Lester

v. Saul*, No. 5:20-CV-01364, 2020 WL 8093313, at *14 (N.D. Ohio Dec. 11, 2020), *report and

recommendation adopted sub nom. Lester v. Comm'r of Soc. Sec.*, 2021 WL 119287 (N.D. Ohio

Jan. 13, 2021) (finding that "the [new] regulations do require that the ALJ clearly explain his

consideration of the opinions and identify the evidence supporting his conclusions").  Below the

Court addresses the ALJ's compliance with this requirement in evaluating the opinions of Ms.

Fincher and Dr. Embry.

## 1.  Ms. Fincher

In a mental impairment questionnaire dated August 20, 2019, Ms. Fincher found mild

limitations in Claimant's ability to understand, remember, or apply information and interact with

others; marked limitation in her ability to concentrate, persist, or maintain pace; and extreme

limitation in her ability to adapt or manage oneself.  (R. at 839.)  Ms. Fincher found that Claimant

would be absent "[a]bout four days per month" due to her limitations.  (*Id.*)  The ALJ found Ms.

Fincher's opinion not persuasive, explaining:

> The opinion is somewhat supported by explanation of the provider's treatment of the claimant and objective evidence in the form of prior diagnostic evaluation (Ex. 23F/1-3). However, the undersigned finds that the opinion is generally not consistent with the record as a whole, as the claimant's mental impairments are not as limiting as the provider assessed. Although the claimant reported that she has difficulty remembering, understanding, concentrating, and getting along with others, she also stated that she is enrolled in college and able to attend classes in person and online. Further, she noted that she is able to manage her money, specifically counting change and handling a savings account (Ex. 5E/3-8; Hearing Testimony). Mental status evaluation shows that the claimant had some limitations with attention and was noted to have hyperactive and restless behavior. She was also anxious appearing on occasion. However, the claimant generally had average intellectual functioning, evidenced by her full-scale IQ scores. Although she had some deficits with her memory, judgment, and decision-making, she generally had appropriate eye contact and cooperative behavior. She also had good insight and adequate reality testing. Additional testing showed that the claimant had perceptual reasoning, working memory, and processing speed abilities in the average range (Ex. 19F/1-4; 20F/10-11; 22F/1-10; 40F/7; 41F/7-8). Therefore, the above opinion is not persuasive, as it is not consistent with or supported by the overall objective evidence of record.

(*Id.* at 26–27.)

While Claimant frames her objection primarily in the context of the procedural requirements imposed by the new regulations, most of her argument discusses the ALJ's purported cherry-picking of the record.  (*See* DN 20-1, at PageID # 1617–21.)  In assessing compliance with the procedural requirements, the Court need only determine whether the ALJ "set forth a 'minimum level of articulation' to be provided in determinations and decisions, in order to 'provide sufficient rationale for a reviewing adjudicator or court.' "  *Warren I. v. Comm'r of Soc. Sec.*, No. 20-495, 2021 WL 860506, at *8 (N.D.N.Y. Mar. 8, 2021) (quoting 82 Fed. Reg. 5844-01 (2017)). This is a different and narrower analysis compared to the substantial evidence standard applied to

allegations of cherry-picking.  *See Hardy*, 554 F. Supp. 3d at 909 (quoting *Blakley v. Comm'r Of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009)) (emphasis in original) (finding that adhering to the procedural requirements of the new regulations is an independent error and noting that "[t]he Court's obligation to review the ALJ's decision includes "whether the ALJ applied the correct legal standards *and* whether the findings of the ALJ are supported by substantial evidence.").  The undersigned addresses the cherry-picking arguments in section II.D.3 below.

Turning to Claimant's arguments regarding compliance with the new regulations, Claimant challenges the ALJ's explanation of the consistency factor.   (DN 20-1, at PageID # 1619.) Claimant notes that in evaluating Ms. Fincher's opinion, the ALJ referenced evidence that was generally consistent her findings, including evidence showing anxiety, attention deficits, and hyperactive and restless behavior.  (*Id.* (citing R. at 26).)  Claimant alleges, "the ALJ discounts this probative evidence using the excuse that she 'generally had appropriate eye contact and cooperative behavior.' " (*Id.*)  Claimant complains that "[i]t is unclear how appropriate eye contact discounts [Clamaint]'s limitations in attention and deficits in memory . . . [and] how cooperative behavior negates hyperactive and restless behavior."  (*Id.*)  Thus, Claimant argues that "[t]he reasons for discounting the opinion evidence are not logically connected to the evidence itself." (DN 20-1, at PageID # 1619.)

Claimant mischaracterizes the ALJ's analysis.  The ALJ did not suggest that the contrary evidence "negates" the evidence of limitation, but rather the ALJ found that the evidence taken together is inconsistent with the severity of limitations that Ms. Fincher found.  (R. at 26.)  Indeed, Claimant's demonstrated capacity for appropriate eye contact and cooperative behavior indicates some level of functioning that undermines Ms. Fincher's finding that Claimant had no ability to adapt or manage herself and serious limitations in ability to concentrate, persist, or maintain pace.

(*See* R. at 839 (Ms. Fincher's questionnaire defining areas of mental functioning as "abilities to focus attention on work activities and stay on task at a sustained rate" and "regulate emotions, control behavior, and maintain well-being in a work setting").  Additionally, the ALJ's reference to this evidence is only a small part of his consistency analysis.  The ALJ also discussed evidence showing her ability to attend college classes and manage her savings account, good insight and adequate reality testing, and above average perceptual reasoning, working memory, and processing speed abilities.  (R. at 26.)  This evidence is plainly inconsistent with the finding of no ability to adapt or manage oneself and suggests less than serious limitations in ability to concentrate, persist, or maintain pace.  Claimant may disagree with how the ALJ weighed the evidence, but the ALJ's discussion of Ms. Fincher's findings and the specific evidence he compared them to provides a sufficient explanation for how he applied the consistency factor such that the Court can understand his reasoning.  *See Howard*, 2021 WL 3271341, at *4 ("The ALJ cited specifically to the record and found that neither opinion was consistent with or supported by it."); *Carrino v. Comm'r of Soc. Sec.*, No. CV 20-380-HRW, 2021 WL 2895181, at *3 (E.D. Ky. July 9, 2021) ("The ALJ considered this opinion but found it unpersuasive because it was not consistent with the other evidence in the record. The ALJ specifically noted that the pertinent mental health treatment Plaintiff received had been conservative.").  Therefore, the Court finds that the ALJ complied with the minimum articulation requirement under the new regulations in evaluating Ms. Fincher's opinion.

### 2.  Dr. Embry

In a mental impairment questionnaire dated September 11, 2019, Dr. Embry found extreme limitations in all four Paragraph B areas of mental functioning and that Claimant would be absent

"[m]ore than four days per month" due to her limitations.  (R. at 845.)  The ALJ found these

findings not persuasive, explaining:

> The findings are not well supported by objective evidence in the
> form of prior diagnostic evaluations performed by the provider,
> which shows that the claimant's mental conditions were stable on
> medication (Ex. 5F/3-4; 20F/10-11). Dr. Embry's mental status
> examinations of the claimant during his brief medication
> management meetings were almost uniformly normal. Further, the
> undersigned finds that the opinion is not consistent with the record
> as a whole.

(*Id.* at 27.)

Claimant argues that the ALJ's explanation is insufficient for several reasons.  First,

Claimant asserts, "The ALJ rejects [Dr. Embry's findings] solely on the fact that Dr. Embrey's

records show Plaintiff was 'stable' on medication." (DN 20-1, at PageID # 1620.) Claimant argues

that "[s]tability does not equal improvement, nor does it equal absence of limitation." (*Id.*)

Claimant references *Garrett v. Berryhill*, No. 3:17-CV-00049, 2018 WL 1521763, at *5 (S.D. Ohio

Mar. 28, 2018) as finding that "[an] ALJ improperly used stability as a reason to reject the opinion

of a physician without considering the context in which the term 'stable' was used." (*Id.*)  Again,

Claimant mischaracterizes the ALJ's analysis.  The ALJ did not solely rely on generalized

statements that Claimant's mental conditions were "stable," but rather the ALJ contextualized

those statements as findings from "prior diagnostic evaluations." (*Id.* at 27.)  Indeed, the records

that the ALJ cited include a section under the header "Medical Decision Making" where Dr. Embry

recorded a treatment plan for each of Claimant's individual mental conditions and his

corresponding "Comment." (*Id.* at 541, 812 (emphasis removed).)  The treatment plans involved

a combination of continued monitoring and course of medication and regular follow up and for

each, Dr. Embry's corresponding comment is "[s]table." (*Id.*)  The ALJ also considered further

context, noting that "mental status examinations of the claimant during his brief medication

management meetings were almost uniformly normal." (*Id.* at 27.) Indeed, in the records the ALJ cited, Dr. Embry recorded the following findings: "Speech normal rate. & tone; Thought Process: logical & coherent; Thought Content: no SI/HI or psychosis; Association & Memory: Intact; Orientation: x3; Mood & Affect: euthymic, affect congruent; Judgement & Insight: Intact." (*Id.* at 540, 811.) This evidence is plainly inconsistent with Dr. Embry's finding that Claimant had no ability to function independently, appropriately, effectively, and on a sustained basis in any area of mental functioning.

Second, Claimant suggests that the ALJ should have acknowledged that Dr. Embry's findings were consistent with "extreme limitation found by LPA Fincher in Plaintiff's ability to adapt or manage herself." (DN 20-1, at PageID # 1620.) To the extent that Claimant contends that the ALJ erred in failing to do so, the Court is not persuaded. An ALJ is not required to address the consistency factor in the context of each individual finding, and in this case, the ALJ had found that Ms. Fincher's findings were inconsistent in the record earlier in his decision. Finally, Claimant emphasizes the ALJ's conclusion that Dr. Embry's "opinion is not consistent with the record as a whole," and contends that "[s]uch a boilerplate, conclusory statement is not sufficient in light of the new regulations." (*Id.* at 1621.) While it is true that an ALJ cannot resort to generalized, boilerplate statements to justify a finding that that a medical opinion is unpersuasive, that is not what the ALJ did here. In addition to his catch-all statement that Claimant cites, the ALJ provided the coherent explanation discussed above. The undersigned recognizes that the ALJ's three-sentence analysis is not a model example of a persuasiveness evaluation under 20 C.F.R. § 416.920c. In other cases, a meatier explanation may be required, but in no case will the regulations demand perfection. Here, in identifying the specific findings in Dr. Embry's opinion that he found unpersuasive and pointing to other specific evidence in the record that he found inconsistent with

those findings such that the reviewing court can engage in meaningful review of his analysis, the ALJ satisfied the minimum articulation level established by the new regulations.

### 3. Selective Citation to the Record

Throughout her fact and law summary, Claimant cites several examples as showing that the ALJ cherry-picked evidence from the record. As a starting point, "[a]lthough required to develop the record fully and fairly, an ALJ is not required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered." *Simons v. Barnhart*, 114 F. App'x 727, 733 (6th Cir. 2004) (quoting *Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000)); *see also Thacker v. Comm'r of Soc. Sec.*, 99 F. App'x 661, 665 (6th Cir. 2004) ("An ALJ need not discuss every piece of evidence in the record for his decision to stand."). However, the Court examines the record as a whole, including whatever evidence "in the record fairly detracts from its weight," without "resolv[ing] conflicts in evidence or decid[ing] questions of credibility" to determine whether an ALJ's decision is supported by substantial evidence. *Conner v. Comm'r of Soc. Sec.*, 658 F. App'x 248, 253 (6th Cir. 2016) (quoting in part *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990) and citing *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713 (6th Cir. 2012)). Thus, where an ALJ has "improperly cherry picked evidence" instead of "more neutrally weighing the evidence," his or her decision is unlikely to be supported by substantial evidence. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 284 (6th Cir. 2009); *see Brooks v. Comm'r of Soc. Sec.*, 531 F. App'x 636, 641 (6th Cir. 2013) ("[S]ubstantiality of evidence evaluation does not permit a selective reading of the record.").

As evidence of the ALJ's purported cherry-picking, Claimant asserts, "In the analysis of both the opinion of Dr. McLean and LPP Conyer, the ALJ has essentially adopted those portions of the opinions that support the RFC he has determined, while rejecting more limiting restrictions

from the RFC without any explanation." (DN 20-1, at PageID # 1615.)  As was discussed in Part II.D.1. above, the ALJ adopted all of the restrictions that Dr. McLean identified in his RFC assessment and there were no "more limiting restrictions" in Ms. Conyer's assessment.  Next, Claimant points to the ALJ's evaluation of Ms. Conyer compared with his evaluation of Ms. Fincher, "the ALJ discounts the opinion of LPA Fincher, especially with regard to attention and concentration, while using deficits in attention and concentration to find LPP Conyer's opinion persuasive. He cannot have it both ways." (*Id.* at 1619.)  There is no indication that the ALJ construed the evidence on attention and concentration limitations differently between his evaluation of Ms. Conyer's and Ms. Fincher's opinions.  In both discussions, the ALJ mentioned Claimant's reported difficulty with attention and concentration, clinical findings showing some limitations, test results showing average intelligence and cognitive functioning, clinical observations of cooperative and appropriate behavior.  (R. at 26.)  In the context of Ms. Conyer's opinion, the ALJ found the evidence consistent with a moderate limitation in concentration.  (*Id.*)  In the context of Ms. Fincher's opinion, the ALJ found the evidence inconsistent with a marked limitation.  (*Id.*)  Claimant also complains that the ALJ relied on her enrollment in college classes as inconsistent with the more sever limitation Ms. Fincher found without mentioning her limited course-load and that she receives accommodations for completing assignments.  (DN 20-1, at PageID # 1618.)  However, the ALJ did not suggest that Claimant was a full-time student, and in evaluating Dr. Perry's and Dr. McLean's opinions, the ALJ discussed Claimant's participation in in person and online classes with coursework accommodations as consistent with their moderate limitation in concentration, persistence and maintaining pace.  (R. at 24–25.)  Finally, Claimant details findings from Ms. Fincher's report as supporting Ms. Fincher's findings and asserts that "the decision from the ALJ is silent on this probative evidence an instead focuses other portions

of the testing that would help to support the RFC." (DN 20-1, at PAgeID # 1619–20.) The Court has reviewed this evidence and the record as a whole and finds that it does not fairly detract from the ALJ's decision. Additionally, the ALJ's thorough and balanced discussion of the medical and other evidence leaves little room to doubt that his decision was the result of neutrally weighing the evidence. Although the ALJ did not discuss all evidence, he was not required to do so. "An ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party. Nor must an ALJ make explicit credibility findings as to each bit of conflicting testimony, so long as his factual findings as a whole show that he implicitly resolved such conflicts." *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x. 496, 508 (6th Cir. 2006) (quoting *Loral Defense Systems-Akron v. N.L.R.B.*, 200 F.3d 436, 453 (6th Cir. 1999)). As long as substantial evidence supports the ALJ's decision, the Court must defer to it, even if there is substantial evidence in the record that would have supported an opposite conclusion. *See Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004). The Court finds that the ALJ's decision was supported by substantial evidence and that Claimant has not met her burden of showing a basis for remand.

## III.    ORDER

For the reasons set forth above, **IT IS HEREBY ORDERED** that the final decision of the Commissioner is **AFFIRMED**. A final judgment will be entered separately.

September 8, 2022

cc:  Counsel of record

Colin H Lindsay, Magistrate Judge
United States District Court

26